UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TONYA S. AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-CV-00005-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tonya S. Austin's ("Austin") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381–85.

**I.    Background**

On December 17, 2010, Austin filed an application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income under Title XVI, §§ 1381-1385. (Tr. 128-34, 135-42). The Social Security Administration ("SSA") initially denied Austin's claim on March 7, 2011. (Tr. 59, 61). She filed a timely request for a hearing before an administrative law judge ("ALJ") on March 25, 2011. (Tr. 11). Following a hearing on September 20, 2012 (Tr. 11), the ALJ issued a written decision on October 25, 2012, upholding the denial of benefits. (Tr. 11-22). Austin requested a review of the ALJ's decision by the Appeals Council. (Tr. 7). On December 9, 2013, the Appeals Council denied Austin's request

1

for review. (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Austin filed this appeal on January 10, 2014. (Doc. 1). The Commissioner filed an Answer. (Doc. 10). Austin filed a Brief in Support of her Complaint.[1] (Doc. No. 12). The Commissioner filed a Brief in Support of the Answer. (Doc. No. 17) Austin did not file a Reply Brief.

## II.     Decision of the ALJ

The ALJ determined that Austin meets the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since September 15, 2010, the alleged onset date of disability. (Tr. 13). The ALJ found Austin had the severe impairments of obesity, intermittent ulcerative colitis, GERD, fibromyalgia, and Barrett's esophagus with dysplasia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

After considering the entire record, the ALJ determined Austin had the residual functional capacity ("RFC") to perform light work, except frequent climbing of ramps and stairs. (Tr. 14) She could never climb ladders, ropes, or scaffolds and could occasionally, stoop, kneel, crouch, and crawl. (Id.) It was determined that Austin should avoid all exposure to hazards such as operational control of moving machinery and unprotected heights while being limited to simple repetitive tasks. (Id.) The ALJ found Austin unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including a laundry worker, bagger, and an office helper. (Tr. 20-21) Thus, the ALJ concluded

---

[1] Austin's 24-page brief, one and a half spaced, in font much smaller than standard 12-point, results in circumvention of the Court's 15-page limitation. See E.D. Mo. L.R. 4.01(D). The Court will overlook the error in this case and suggests that counsel follow the Rules in future briefs.

2

that a finding of "not disabled" was appropriate. (Tr. 22) Austin appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on September 20, 2012. The ALJ heard testimony from Tonya S. Austin and Dr. Jeffrey Magrowski, a vocational expert. (Tr. 28)

#### 1. Austin's testimony

Austin was 39 years old at the time of the hearing. (Tr. 33) She is married and has two children, ages 11 and 9. (Tr. 33-34) Austin lives with her husband, Dwayne, and her children. (Tr. 34) She is 5'2" and 190 pounds and is right-handed. (Id.) She has a high school education along with one year of vocational education that was not completed. (Tr. 35)

Austin last worked over two years ago at the Missouri Department of Transportation (MoDOT). (Id.) She was let go for missing too many days of work. (Id.) Austin missed work once or twice a week due to headaches and stomach pain. (Tr. 35-36) She had worked for MoDOT for 14 years before going on medical leave due to migraines and stomach pain. (Tr. 36)

Austin's headaches occur five to seven days a week and would last seven to ten hours at a time depending on how much Advil she takes. (Id.) The location of Austin's headaches varies. (Id.) Sometimes the pain will occur in the back of her neck while other times it is in the front of her head. (Id.) Austin takes Advil and does not ingest hydrocodone due to her stomach pain and constipation. (Tr. 37) At the onset of a headache, Austin will take three to four Advil. (Id.) Due to pain, she often lays in bed for three to four hours, moves to a couch when her back hurts, and will end up back in bed while taking a few more Advil. (Id.) Austin's headaches come with

3

sensitivity to both light and sound. (Tr. 37) As a result, she has received two or three numbing shots in the base of her skull. (Tr. 37-8) In the last year, Austin has gotten the shots two or three times, but they will not allow many of the shots. (Tr. 38)

Austin also experiences back pain if she lays, sits, or stands too long. (Id.) In order to alleviate her pain, Austin must "resituate" every hour and a half. (Id.) Similarly, Austin cannot stand for more than half an hour before she must sit down. (Id.) Sometimes, she has to lie down in bed or on the couch after standing for too long. (Id.)

Austin often experiences stomach pain that she describes as a "cocklebur" moving along her intestinal tract. (Tr. 39) The stomach pain causes Austin to experience problems with her bowel movements. (Id.) When constipated, her bowel movements occur once every three weeks if "[she's] lucky." (Id.) Further, if constipated, Austin's bathroom visits can take up to thirty minutes. (Tr. 48) During this time, Austin's bowel movements hurt and can be diarrhea, but diarrhea is not common – once every two months. (Tr. 39) However, when Austin does experience diarrhea the symptoms occur for up to a week and a half causing her to need medicine to stop. (Id.) Typically, she will spend no more than ten minutes in the bathroom if she is experiencing diarrhea. (Tr. 48) Without the medicine, Austin would have diarrhea "about every hour." (Tr. 40)

Austin's stomach pain is not always triggered by eating, but does occur every time she eats. (Tr. 44) Austin's stomach pain will begin when she is eating and cause her to stop eating whether she is hungry or not. (Tr. 45) Also, if she stands up too fast, she'll get the stomach pain and double over for relief. (Tr. 40) Her stomach pain, when caused by standing to quickly, can last up to two hours. (Id.) During that time, Austin will break out in a sweat and have to lie down or sit down due to her feeling as though she may pass out. (Id.) Similarly, Austin's stomach pain

4

can be aggravated by walking or by bumps while riding in a car. (Tr. 47) Overall, the "cocklebur feeling," when caused by eating, can last four to five hours. (Tr. 41) Austin testified that she cannot take pain medicine because "it just makes it worse." (Tr. 43) Austin's stomach pain and bowel issues often result in a lack of appetite which then leads to fatigue. (Tr. 41) Austin usually eats one to two meals a day. (Tr. 45) As a result, Austin has lost 10 pounds at times or sometimes two to three pounds here and there (Tr. 46).

At one point during the hearing, Austin needed to stand due to her back pain and take a break from testifying. (Tr. 42) She then continued to testify regarding her problems with depression and anxiety. (Id.) This depression is brought on by Austin's fatigue and inability to do anything around her house like she used to. (Id.) She used to enjoy doing many things outside, such as mowing the yard and riding horses. (Tr. 51) There are not very many good days where Austin can enjoy those activities. (Id.) Consequently, Austin's husband "does everything" around their home. (Tr. 42) Overall, Austin believes her [poor] health, specifically her stomach and back, has led to her depression. (Tr. 43)

Additionally, Austin has been diagnosed with fibromyalgia in her back, neck, shoulders, and knees. (Tr. 46) She describes the fibromyalgia pains as an "ache." (Id.) The ache in her back remains constant, while the ache in her shoulders and knees comes and goes. (Id.) The ache is typically brought on by Austin standing for long periods of time and will be three times worse than if she had been sitting. (Tr. 47) Because of this pain, the heaviest thing Austin lifts is a "gallon of milk…or tea." (Id.) Austin indicated that she has "trigger points" on all sides of her body, but primarily located in her shoulders, back, knees, and hips. (Tr. 50) She did not recall the exact number of diagnosed trigger points. (Id.) Austin has not been to a rheumatologist. (Id.) Dr. Dykstra of the Quincy Medical Group in Canton diagnosed her fibromyalgia. (Id.)

5

Austin reports taking Nortripyline, Topamax for her headaches, Senna-Lax for her bowels, and Omeprazole for her heartburn. (Tr. 43) She treats her constipation with pills taken every night. (Tr. 41) Although Austin's records indicate she was prescribed "pain meds [to be] taken during intense pain episodes," neither the ALJ nor Austin identified which of Austin's medications fit the description. (Tr. 48-9) Moreover, although Austin is not aware which medication is the cause; she experiences side effects in the form of dizziness and sleepiness that last "throughout the day." (Tr. 49)

The ALJ inquired as to Austin's earnings record. (Tr. 52) She has not worked since Sept. 15, 2010, but she received $802 in 2011 that MODOT paid for her allowed leave, vacation time, and sick leave. (Id.)

### 2. Testimony of Vocational Expert

Vocational expert, Dr. Jeffrey Magrowski, testified regarding Austin's vocational history as follows. Dr. Magrowski's qualifications were stipulated to by claimant's counsel. Austin has been a maintenance crew member for the State Highway Department, classified by the Dictionary of Occupational Title ("DOT") as heavy to medium work, code 899.684-014 and a specific vocational preparation ("SVP") of 3. (Tr. 53) She also did some bridge maintenance work, classified by DOT as heavy work, code 801.361-014 and a SVP of 7. (Id.) Margrowski classified Austin's past work as medium. (Id.)

For hypothetical one, the ALJ asked Dr. Magrowski to assume a person with the vocational factors identified (aged 39, high school education, and claimant's past work experience) is capable of performing the full range of light exertional work with the following limitations: frequent climbing or ramps and stairs, no climbing of ladders, ropes or scaffolds, occasional stooping, frequent kneeling, crouching and crawling; avoiding all exposure to

6

operational control hazards of moving machinery and unprotected heights; and limited to simple, routine and repetitive tasks. (Tr. 54) Magrowski determined that such a person would not be able to perform any of Austin's past work. (Id.) However, such a person would be able to perform a job such as a laundry worker, DOT 789.687-066, SVP of 2, light work. (Tr. 54-5) There are about 1000 positions in the area or state and 20,000 nationally. (Tr. 55) In addition, such a person could perform the job of a bagger, DOT 920.687-018, SVP 1, light work. (Id.) There are 500 positions in the area or state and 50,000 nationally. (Id.) Finally, such a person could perform the job of an office helper, DOT 239.367-010, SVP 2, light work. (Id.) There are at least 1000 positions in the area or state and 80,000 nationally. (Id.)

For the second hypothetical, the ALJ asked Magrowski to assume the same factors identified above, but reduced the limitations to the full range of sedentary exertional work as defined in the regulations. Magrowski determined that such a person could perform the same work as a packer, DOT 559.687-014, SVP 2, sedentary work. (Id.) There are about 300 positions in the area or state and 17,000 nationally. (Id.) Additionally, such a person could perform some assembly work like a table worker, DOT 739.687-182, SVP 2, sedentary work. (Tr. 55-56) There are about 500 positions in the area or state and 20,000 nationally. (Tr. 56) Lastly, there is some work as a stuffer, DOT 731.685-014, SVP 2, sedentary work. (Id.) There are approximately 400 positions in the area or state and 10,000 nationally. (Id.)

Magrowski further testified that if the individual was forced to miss work more than two days within three months, all of these jobs could not be sustained. (Id.) Similarly, these jobs require the individual to remain "on task" 95% of the time; not taking into account for the time for lunch and breaks. (Tr. 56-57)

**B.     Medical Records**

The ALJ summarized Austin's medical records at Tr. 17-19. Relevant medical records are discussed as part of the analysis.

**IV.    Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

8

impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national

economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[2] to meet this burden. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;
    (2) The education, background, work history, and age of the claimant;
    (3) The medical evidence given by the claimant's treating physicians;
    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
    (5) The corroboration by third parties of the claimant's physical impairment;
    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
    (7) The testimony of consulting physicians.

---

[2] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

10

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Austin raises five issues. First, she alleges the ALJ's RFC assessment failed to include detailed findings, consider medication side effects and failed to address Austin's ability to perform full time work on a regular basis. (Doc. 12 at 6) Second, Austin argues the ALJ failed to consider the various factors set forth in 20 C.F.R. 404.1527(d) when evaluating the opinion of the treating physician. (Id. at 9-10). Third, Austin contends the ALJ failed to properly evaluate the severity of her fibromyalgia. (Id. at 11). Fourth, Austin claims the ALJ erred in failing to determine her adjustment disorder was a severe impairment. (Id. at 12). Finally, Austin contends the ALJ's credibility determination is patently erroneous. (Id. at 13). Because the ALJ erred in failing to properly consider Austin's mental impairments, including her adjustment disorder, the Court will only address that issue.

Austin claims the ALJ erred in failing to determine her adjustment disorder was a severe impairment. (Doc. 12 at 12) At step two of the sequential analysis, the ALJ recognized several of Austin's impairments as severe. (Tr. 13) However, the ALJ did not explicitly mention whether Austin's adjustment disorder was severe or non-severe. (Tr. 13) He notes, "I find that all impairments other than those enumerated above, alleged and found in the record, are non-severe or not medically determinable limitations . . . ." (Tr. 14)

To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. See 20 C.F.R §§ 404.1520(c), 416.920(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including

11

physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." Kirby v. Astrue, 500 F.3d at 708.

It is unclear to the Court whether the ALJ determined if <u>any</u> of Austin's mental impairments (adjustment disorder, depression, and anxiety) were severe. The Commissioner notes that the ALJ determined at Step Three that Austin's "mental impairment"[3] did not meet the criteria of listing 12.04 or 12.06 and therefore the ALJ's decisions "suggests" that he did find her adjustment disorder to be severe. (Tr. 15; Doc. 17 at 6) In so-doing, the ALJ determined that Austin has a mild restriction in her activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (Tr. 15) If the ALJ did consider Austin's mental conditions to be severe, he would then need to address them at Step Four, the RFC determination. However, absent a brief mention, the ALJ did not address any of Austin's mental impairments. (Tr. 19)

Alternatively, the Commissioner asserts that Austin's adjustment disorder is not severe and, prior to her administrative hearing, Austin had not alleged any limitations from anxiety or depression. (Doc. 17 at 5) The Commissioner argues that neither the situational depression prior to Austin's onset of disability nor the isolated mention of depression in June 2012 warranted further investigation by the agency. (Doc. 17 at 5) Nevertheless, the Court finds that there is enough evidence in the record that an ALJ could have determined Plaintiff's mental impairments to be severe and it was his responsibility to develop the record. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) ("[T]he ALJ bears a responsibility to develop the record fairly and fully,

---

[3] The ALJ does not indicate which of Austin's mental impairments he is addressing.

12

independent of the claimant's burden to press his case.") Plaintiff has been diagnosed with mixed anxiety and depression on several occasions (Tr. 407, 414) and the records are sporadically dotted with reports of depression, stress, and anxiety as well as psychotropic medication potentially prescribed for these conditions (Tr. 276, 313, 315, 316, 318). The most telling evidence in support of Austin's position that these mental impairments were severe is that the ALJ engaged in a Step Three analysis of listings 12.04 and 12.06. Again, the ALJ fails to indicate which mental impairment he is addressing, however, a logical assumption is that he considered at least one impairment sufficiently severe to warrant a review under these listings. Further, the ALJ's own analysis at Step Three supports this theory. Specifically, the ALJ determines mild limitations in Austin's activities of daily living and social functioning as well as *moderate* difficulties with regard to persistence and pace. (Tr. 15) (emphasis added).

Because the Court cannot determine from the ALJ's decision whether he appropriately addressed Austin's mental impairments, the matter must be remanded.

## VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to determine whether Austin's mental impairments, including her anxiety, depression, and adjustment disorder, are severe impairments; further develop the medical record if necessary; and then continue with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

13

Dated this 31st day of March, 2015.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE